Ornamental Fabricators, Inc. v. Commissioner.
Ornamental Fabricators v. Commissioner
Docket No. 15575.
United States Tax Court
1948 Tax Ct. Memo LEXIS 106; 7 T.C.M. (CCH) 610; T.C.M. (RIA) 48163; August 25, 1948
*106 William Patrick Clyne, Esq., 1401 N.B.C. Bldg., Cleveland, Ohio, for the petitioner. Lawrence R. Bloomenthal, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies as follows: Excess
Declared Value
Profits
Excess-Profits
Tax
Tax
1942
$ 8,102.26
$290.69
1943
12,989.05
277.77
1944
11,310.89
362.32 The only issue is whether the Commissioner erred in disallowing the excess over $36,000 a year claimed as deductions for officers' salaries. Findings of Fact The petitioner was incorporated in January 1939 and has since operated a nonferrous foundry in Cleveland, Ohio. Its returns for the taxable years were filed with the collector of internal revenue for the 18th district of Ohio. R. B. Mullen, Ralph Warnement, Joseph Correll and Vincent Barta organized the petitioner. They left their previous employment with John Harsch Bronze & Foundry Company and founded the petitioner because they were dissatisfied with the compensation being paid them. Mullen had been purchasing agent and sales manager, Warnement had been in charge of ornamental sales, estimating and designing, *107 Correll had been in charge of experimental work and of the mold and die department, and Barta had been superintendent of the ornamental division for Harsch. The declared value and subscription price of the stock of the petitioner was $20 per share. M. H. Phillips held one share during the taxable years. Mullen, Warnement, Correll and Barta each owned 40 shares at the beginning of 1942, at which time 100 shares were owned by F. P. McBerty. McBerty died during 1942 and in December of that year Mullen, Warnement, Correll and Barta each purchased 25 of his shares at $30 per share. McBerty was a director of the petitioner up to the time of his death. The officers were also directors. The officers of the petitioner during the taxable years were as follows: Mullen
President and Treasurer
Warnement
Secretary
Correll
Vice President
Barta
Vice President
Warnement, Correll and Barta were expert craftsmen in their fields. Mullen was the purchasing agent for the petitioner during the taxable years. He also did the estimating in collaboration with Warnement and Correll. Warnement was the works suprevisor was in charge of plant maintenance, designing and selling. Selling *108 was no problem after the beginning of 1942 because the products of the petitioner were in demand for military purposes. Correll worked in the foundry, did experimental molding and laboratory work, and was in charge of the molding phase of production during the taxable years. He supervised the work of about 16 men. Barta did ornamental work until the war limited the activities of the petitioner to castings. Thereafter he worked in the foundry and was in charge of the grinding room and the pattern work during the taxable years. He did mechanical as well as supervisory work. His work during the taxable years was as complicated and required as much skill as his work prior to the war. The officers worked in the plant throughout the taxable years because they could not get enough craftsmen. They also met as an executive committee to formulate policies and to direct labor relations, management and financial matters. Each worked about 75 hours a week during the taxable years. Mullen devoted about one-half of his time to executive duties and the other three officers devoted about 5 per cent of their time to such duties. The following table shows the amount paid to each of the officers during *109 the years indicated. 1939
1940
1941
1942
1943
1944
Mullen
$1,750.00
$2,455.00
$9,000.00
$15,000.00
$15,000.00
$15,000.0
Warnement
1,750.00
2,525.00
6,998.40
11,664.00
11,664.00
11,137.44
Correll
2,562.50
6,998.40
11,664.00
11,664.00
11,142.65
Barta
1,750.00
2,525.00
6,998.40
11,664.00
11,664.00
11,137.44
The above salaries include not only the salaries authorized by the board of directors at the beginning of each year, but also, in the case of Warnement, Correll and Barta, include for each of the years 1941 through 1944 an additional amount ranging from $998.40 to $1,664 which the Wage and Hour Division directed should be paid them for over-time work. The Commissioner, in determining the deficiencies for each of the taxable years, allowed as reasonable annual compensation $12,000 for Mullen, and $8,000 for each of the other three officers. Reasonable allowances for salaries and other compensation for personal services rendered during the taxable years are as follows: 1942
1943
1944
Mullen
$15,000.00
$15,000.00
$15,000.00
Warnement
11,664.00
11,664.00
11,137.44
Correll
11,664.00
11,664.00
11,142.65
Barta
11,664.00
11,664.00
11,137.44
*110 The stipulated facts are incorporated herein by this reference. Opinion MURDOCK, Judge: The respondent has cut down the deduction for salaries as indicated in the findings of fact. He argues that the salaries in excess of the amount which he has allowed as deductions were in fact distributions of profits. The petitioner never declared any any dividends up to the close of 1944. The respondent points that the four officers were in complete control of the petitioner. He argues that their salaries are out of proportion to the other expenses of the petitioner, it did not need four highly paid executives, and it has not sustained its burden of proof to show error in the Commissioner's determination. He also points out that the increase in sales resulting from the impact of the war did not represent successful sales efforts on the part of the officers. These arguments and all of the circumstances in the case have been carefully considered. The four men whose salaries are in question organized the petitioner in 1939. They alone were responsible for its success. Their duties and responsibilities increased as it grew, it had sales in excess of $200,000 during each of the taxable years, *111 and it employed about 20 persons. Warnement, Correll and Barta were skilled workmen who were constantly employed during the taxable years and were spending extra long hours in the plant of the petitioner. There is evidence to show that they could have earned as employees, with no executive duties, amount equal to the full amount paid them by the petitioner during the taxable years. They devoted only a small part of their time to executive duties. The deduction of the amounts paid them is fully justified by the evidence. The evidence in regard to what would be a reasonable salary for services rendered by Mullen during the taxable years is not quite as clear and convincing, but there is evidence to show that he was the chief executive officer of the petitioner during all of those years, devoting long hours to its affairs and guiding it successfully to a realization of substantial profits. The record also shows that he as well as the others were paid inadequate salaries during 1939 and 1940. The assets of the petitioner during the taxable years varied from about $38,500 to $49,500. Its profits, before taxes, varied from about $6,300 to about $15,000. The earned surplus increased from *112 about $7,600 at the end of 1942 to about $22,000 at the end of 1944. There was some direct testimony that the petitioner was well-managed during the taxable years and that the services of Mullen were worth the amount paid him during the taxable years. The evidence as a whole preponderates slightly in favor of the petitioner's contention that a reasonable compensation for Mullen was $15,000 per year during the taxable years and a finding to that effect has been made. Decision will be entered under Rule 50.